# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MARY ESTRADA,**

        **Plaintiff,**

v.                                      **Civil Action 2:18-cv-960**
                                               **Judge Michael H. Watson**
                                               **Magistrate Judge Jolson**

**COMMISIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Mary Estrada, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 8) be **OVERRULED**, and that judgment be entered in favor of Defendant.

## I. BACKGROUND

Plaintiff filed her application for SSI on February 11, 2015, alleging that she was disabled beginning September 1, 2006. (Doc. 7, Tr. 193). She later amended her onset date to February 10, 2015. (Tr. 222). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on October 11, 2017. (Tr. 48–96). On February 9, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 17–37). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on August 27, 2018 (Doc. 1), and the Commissioner filed the administrative record on November 19, 2018

(Doc. 7). Plaintiff filed her Statement of Errors (Doc. 8), and Defendant filed an Opposition (Doc. 9), and no reply was filed. Thus, this matter is now ripe for consideration.

### A. Relevant Hearing Testimony

*1. Plaintiff's Testimony*

Relevant here, Plaintiff testified about her mental health and abilities. She testified that being around new people or in new places makes her anxious, and her anxiety causes her to pick at her skin. (Tr. 66–67). She does not drive to new places, and she leaves the house only for doctors' appointments and grocery shopping. (Tr. 67–68). When Plaintiff goes to the store, her daughter accompanies her, prepares the grocery list, and marks off items on the list as they shop. (Tr. 68). Plaintiff's daughter also assists Plaintiff with scheduling doctors' appointments and other paperwork. (Tr. 69). Plaintiff testified that, at a previous job, she struggled with the required paperwork. (Tr. 68–69).

Plaintiff additionally testified about her memory. She told the ALJ that, at times, she forgets to eat, bathe, or take her medications. (Tr. 72–73). When doing households chores, she sometimes leaves the oven on, leaves clothes in the washing machine or dryer, or forgets about dishes in the sink. (Tr. 73). Plaintiff testified that she takes Cymbalta and Zyprexa for her depression and anxiety. (Tr. 69).

*2. Dr. Lace's Testimony*

Dr. Michael A. Lace, Psy.D., a non-examining medical expert, also testified at the administrative hearing. He indicated that Plaintiff has a condition described as "borderline intellectual functioning" as well as depressive and anxiety disorders not otherwise specified. (Tr. 76). Dr. Lace further testified that while Plaintiff may have some challenges with reading, she would be capable of reading simple sentences. Dr. Lace also explained his opinion regarding the notations in the record from a state agency examiner and social worker regarding Plaintiff's

limitations. Dr. Lace stated that within the confines of simple, routine, repetitive tasks, there would be no need for additional assistance based on his evaluation of the record as a whole. (Tr. 77–78). Dr. Lace concluded that Plaintiff should be limited to simple, routine, repetitive tasks where there is only occasional contact with coworkers, the general public, and supervisors and no high production quotas or fast pace. (Tr. 78).

B. **Relevant Medical Background**

As noted, Plaintiff's Statement of Errors concerns her mental health, and it follows that the Court examines only the same. The ALJ usefully summarized the relevant records:

> On October 2, 2014, the claimant underwent a psychological consultative examination, alleging depression, anxiety or nerves (Exhibit 2F, page 1). The claimant reported living with her two daughters and grandchild. She reported getting up at 11 am, independently performing personal hygiene activities, picking up around the house, watching television, playing with the baby, and doing dishes (Exhibit 2F, page 4). She also indicated that she plays cards with her father some, visiting him in the evenings, watching television, and having one or two friends (Exhibit 2F, page 4). Mental status examination noted a minimal range of motion, reports of depression and anxiety, has possible reading and memory problems, less than marginal insight, and at least marginal judgment (Exhibit 2F, page 3). The claimant also underwent a Wechsler Adult Intelligence Scale, Fourth Edition, in which she achieved a verbal comprehension index score of 70, a perceptual reasoning index score of 73, and a full-scale IQ score of 63 (Exhibit 2F, pages 3- 6). Examiner Floyd Sours, M.A., diagnosed unspecified depressive disorder, unspecified anxiety disorder, and borderline intellectual functioning, based on the claimant's reports of activities of daily living, testing, the claimant's lack of glasses therefore in inability to see to read, and noted possible memory problems (Exhibit 2F, page 4). Mr. Sours indicated that the claimant would have some limitation on her ability to understand, remember, and carry out instructions in a work setting; would have the ability to attend and concentrate as she persists and paces herself in the pursuit of simple, repetitive tasks, as well as multi-step tasks in a work setting; would have the ability to maintain appropriate behavior in a work setting as she relates to supervisors and co- workers; and would have the ability to maintain appropriate behavior under work pressure in a work setting (Exhibit 2F, page 5).
>
> On June 24, 2015, the claimant underwent a second psychological consultative evaluation, alleging depression in additional to physical impairments (Exhibit 1OF, page 1). The claimant reported living with her daughter, and not interacting with neighbors, and stated that she stopped working to care for her children, although she is not unable to work due to physical problems (Exhibit l0F, page 2). She

3

reported no history of outpatient counseling, and using psychotropic medication with "a little" positive response (Exhibit 10F, page 2). She indicated she get out of bed between 7 and 9am, has breakfast, watches television for a couple of hours, plays games on her tablet, and is able to socialize with family members. She indicated that her daughter does the cooking and cleaning, and they both shop. She stated she is able to read her mail but needs help with comprehension, can write a simple list, and took a written driver's license test. Mental status examination was notable for being mildly anxious and jumpy, tense posture, constricted affect and mildly dysphoric, irritable, and anxious mood, evidence of mild psychomotor agitation, with no difficulty understanding simple or moderately complex instructions, limited short-term memory and delayed auditory recall, average long-term memory, fair to variable concentration, adequate persistence and pace, and some insight into her psychological problems and need for treatment (Exhibit 10F, page 3). Examiner Steven Meyer, Ph.D., diagnosed adjustment disorder with depression and anxiety, learning disorder by history, and a GAF of 60 (Exhibit 10F, page 4). Dr. Meyer indicated the claimant's prior diagnosis of borderline intellectual functioning seemed overall consistent with her presentation and self-report (Exhibit 10F, page 4). Dr. Meyer indicated that the claimant would have the cognitive capacity to understand, remember, and carryout simple and moderately complex routine instructions and tasks, with some oral and hands-on assistance and supervision if needed; would be expected to be able to perform adequately in a setting without strict production requirements and with some additional assistance available as needed at times of learning and performing new tasks; is expected to be able to perform best in a nonsocial, solitary setting, with at most intermittent contact with coworkers and supervisors; and is expected to be able to withstand the demands of a low stress work setting, for work within any physical conditions, with ongoing medication compliance, and with some additional assistance available as needed at times of change in routine (Exhibit 10F, pages 4-5).

The claimant establish with mental health services on July 29, 2015, reporting depression, anxiety, and stressors including: her daughter's recent hospitalization due to her mental health and substance abuse; her father's stroke; inability to work due to physical issues; denial of her disability claim; and finances (Exhibit 14F, page 1). She reported living with her father and niece to help provide care after his stroke (Exhibit 14F, page 2). Mental status examination was notable for depression/sadness, impaired recent memory, with reports of anxiety around crowds, when leaving her home, and racing thoughts (Exhibit 14F, pages 6-7). The claimant was diagnosed with depressive disorder, anxiety disorder, a GAF of 45, and counseling and medication management was advised (Exhibit 14F, page 8).

On October 21, 2015, the claimant reported for evaluation of anxiety symptoms with her family medicine treatment provider, alleging a worsening of symptoms despite a daily medication regimen and counseling every two weeks (Exhibit 15F, page 12). Psychiatric examination noted an anxious and depressed mood, with Lexapro prescribed and a referral to psychiatry given (Exhibit 15F, page 15).

> Follow up with her family medicine treatment provider for anxiety and depression in February 2016, noted the claimant feeling down due to a lot of stress in her life, mostly financial, and that she was caring for two children and one grandchild (Exhibit 15F, page 21). Psychiatric findings were noted as normal, with modification made to the claimant's anxiety medication regimen (Exhibit 15F, pages 22-23).
>
> The medication management records on April 20, 2016, noted continued reports of anxiety, mood swings, poor sleep, with psychiatric evaluation notable for tangential and circumstantial associations, impaired abstract thinking, limited insight into problems, limited fund of knowledge, and a blunted mood and affect (Exhibit 14F, pages 10-15). A trial of Cymbalta was prescribed (Exhibit 1F, page 16). Psychiatric examination during follow up in May 2016 noted a normal mood and affect, normal behavior, and normal judgment and thought content (Exhibit 15F, page 32). Follow up in August 2016 showed no significant changes in the claimant's reported symptoms or mental status examination, and Zyprexa was added to the claimant's regimen to reduce irritable mood and help sleep (Exhibits 14F, pages 19-25; 15F, page 37).
>
> Follow up in December 2016 showed improvement in the claimant's psychiatric examination, with reports of auditory hallucinations, and a blunted mood and affect, but otherwise unremarkable (Exhibit 14F, pages 32-33). Be that as it may, the claimant's medication dosages were increased due to continued reports of depression (Exhibit 14F, page 34). Follow up in March 2017 noted no significant findings on psychiatric examination, with recommendation for the claimant's medications to stay the same as she was as well as ever (Exhibit 14F, pages 41-43).

(Tr. 29–31).

**C. State Agency Reviewers**

In a review dated July 15, 2015, state agency psychologist Joseph Edwards, Ph.D. assessed Plaintiff's mental abilities after he had reviewed Plaintiff's medical records through that date. Dr. Edwards gave the consultative examiners' opinions "great weight" and concluded that Plaintiff was "not significantly limited" in certain mental arenas and "moderately limited" in others. (Tr. 107, 110–11)). For instance, Dr. Edwards found that Plaintiff's ability to remember locations and work-like procedures was "not significantly limited," but her abilities to carry-out detailed instructions, perform activities within a regular schedule, and sustain an ordinary routine without special supervision were "moderately limited." (Tr. 110; *see also* Tr. 111 (assessing additional

limitations)). Another state reviewer came to the same conclusions when Plaintiff's claim was reconsidered. (Tr. 126, 128–29).

### D. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful employment since February 11, 2015, the application date. (Tr. 19). The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis of the left hip; degenerative joint disease of the feet; asthma; chronic obstructive pulmonary disease; migraines; obstructive sleep apnea; obesity; affective disorder; anxiety; and borderline intellectual functioning. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 21).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: the claimant's ability to stand and/or walk is limited to 4 hours in an 8 hour workday; frequent exposure to extreme temperatures, atmospheric conditions, and pulmonary irritants. The claimant can occasionally climb ramps or stairs, perform balancing, stooping, kneeling, crouching, crawling, and use of foot controls with the left lower extremity. The claimant cannot climb ladders, ropes, or scaffolds, or exposure to hazards such as dangerous moving machinery or unprotected heights. The claimant can perform simple, routine, repetitive tasks, with occasional interaction with others, no fast production pace, or high, strict production quotas.

(Tr. 25).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*

*v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises one error to the Court. (Doc. 8). She argues that the ALJ reversibly erred in evaluating the opinion and mental health evidence. Specifically, Plaintiff asserts that the ALJ impermissibly relied on the opinion of Michael A. Lace, Psy.D., a non-examining medical expert, who testified at the administrative hearing. (*Id.* at 6–7). And, Plaintiff argues, the ALJ instead should have preferred the opinions of the consultative examiners (Drs. Meyer and Sours), the state agency reviewers who gave those opinions "great weight," and the opinion of Plaintiff's treating social worker. (*Id.*).

Under the Regulations, an administrative law judge is charged with evaluating all of the medical evidence and resolving any conflicts that might appear. 20 C.F.R. § 416.927. In doing so, the ALJ will give each opinion the weight deemed appropriate based on factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the entire record. 20 C.F.R. § 416.927(c). Typically, the opinion of a source who has examined the claimant is entitled to greater weight than the opinion of a non-examining source. 20 C.F.R. § 416.927(c)(1). But the ALJ may reject an opinion that is inconsistent with the record. 20 C.F.R. § 416.927(c)(4); *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010).

7

Here, the ALJ heard testimony from Dr. Lace, an independent psychologist who had reviewed the evidentiary record and had listened to Plaintiff's testimony during the administrative hearing. (Tr. 76). Dr. Lace testified that Plaintiff's medical records supported that she experienced borderline intellectual functioning, depression, and anxiety. (Tr. 76–77). But Dr. Lace testified that some evidence, such Plaintiff's GAF score of 60, suggested symptoms that were "well within normal limits." (Tr. 77). And, although the state agency consultants noted "mild to moderate limitations in certain records," Dr. Lace opined that Plaintiff's "mental status exams were actually within normal limits." (Tr. 77 (relying on Tr. 577–582, 593–596, 600–680)). Relatedly, Dr. Lace testified that the findings of the October 2014 consultative examination may be problematic because Plaintiff did not have her glasses and thus could not read during the test. (Tr. 76).

Ultimately, Dr. Lace concluded that the "general tone of the record would be of moderate limitations in most categories." (Tr. 77). Dr. Lace then proceeded to testify that Plaintiff's impairments did not meet or medical equal any Listing. (*Id.*). Dr. Lace also explained the work limitations Plaintiff would need. (Tr. 78). In particular, Dr. Lace opined that Plaintiff should be limited to simple, routine, repetitive tasks; where there is only occasional contact with coworkers, the general public, and supervisors; with no high production quotas and no fast pace. (*Id.*).

In response to Plaintiff's attorney's questioning, Dr. Lace was clear that he partially disagreed with the consultative examiners and Plaintiff's social worker:

> Q. So, you're going against both the consultative examiner's and the social worker's statements that you don't believe those are supported?
>
> A. Within the confines of simple, routine, repetitive tasks, there wouldn't be any additional assistance, based on the record as a whole, and presentation in those -- in the mental status exams and so forth.

(Tr. 81).

When considering the opinion evidence, the ALJ gave great—but not dispositive—weight

to Dr. Lace's opinion. (Tr. 33). The ALJ determined that Dr. Lace's opinion was valuable because Dr. Lace "had the opportunity to review the entirety of the evidence of record," and Plaintiff's lawyer had the opportunity to question Dr. Lace in order "to elicit clear and complete information[.]" (*Id.*). In contrast, the ALJ discounted the state agency consultants' opinions, in part, because they examined Plaintiff only once and did not have the benefit of the entire record. (*Id.*).

Plaintiff contends this was error. Specifically, Plaintiff asserts that the ALJ's reliance on Dr. Lace's opinion was improper and that the ALJ should have afforded the consultative examiners' and state agency reviewers' opinions greater weight than Dr. Lace's. (Doc. 8 at 11 (arguing for greater weight for the October 2014 opinion of Floyd Sours, MA, and the July 2015 opinion of Dr. Steven J. Meyer, Ph.D.). Plaintiff also relies on the records of her social worker, Lindsey Cornett, to argue that more mental limitations were required in the RFC. (*Id.*).

All told, Plaintiff's mental health records are inconsistent. Namely, her GAF scores ranged significantly, from 45 to 60. And although she reported psychiatric symptoms, her examinations tended to show a normal mood and affect, normal behavior, and normal judgment and thought content. (*See, e.g.*, Tr. 708 ("Psychiatric: She has a normal mood and affect. Her behavior is normal. Judgment and thought content normal."); Tr. 712 (same); Tr. 717 (same); Tr. 726 (same)). And, as noted, Dr. Lace and the state agency reviewers came to different conclusions. So the ALJ had to choose between differing opinions. In doing so, the ALJ noted that there was additional evidence submitted after the state agency reviewers' last review in November 2015. (Tr. 32–33). For instance, the state agency reviewers did not review treatment records from Plaintiff's biweekly, outpatient psychotherapy sessions beginning in July 2015 through August 2017. (*See* Tr. 33). In contrast, Dr. Lace had the opportunity to review the entire record, including two years of mental

9

health notes and opinion evidence from Plaintiff's treating social worker. Consequently, it was not improper for the ALJ to find Dr. Lace's opinion more useful than the consultative examiners' and state agency reviewers' opinions. *See Werner v. Comm'r of Soc. Sec.*, No. 1:12-CV-143, 2013 WL 1137502, at *6 (N.D. Ohio Mar. 18, 2013) ("[T]here are instances where it may be appropriate for the ALJ to look more favorably upon the opinion of a non-examining source, such as a medical expert, especially when the medical expert has access to the claimant's complete medical record and observed the claimant at trial.").

Additionally, the ALJ properly considered Ms. Cornett's opinion. As a social worker, Ms. Cornett is not an acceptable medical source under the relevant regulations. *See* 20 C.F.R. § 416.913(a), (d)(1) (explaining that social worker is not an acceptable medical source and is, instead, an "other source").[1] The ALJ acknowledged Ms. Cornett's opinion that Plaintiff had "limited but satisfactory" abilities to perform semi-skilled and skilled tasks but was "seriously limited" in performing many unskilled tasks. (Tr. 34 (citing Tr. 942–43)). The ALJ also noted Ms. Cornett's opinion that Plaintiff would miss about four days of work per month. The ALJ assigned this opinion little weight:

> The evidence of record does not support the extent and frequency of the purported biweekly outpatient psychotherapy treatments as noted by Ms. [C]ornett, rather specific mental health treatment is limited and intermittent. Furthermore, Ms. [C]ornett's assessed limitations are of such severity that one would expect some reflection of them in the claimant's mental status and psychiatric assessments, which were generally unremarkable as noted above. Additionally, Ms. [C]ornett's limitations are somewhat internally inconsistent, as they suggest the claimant would have multiple serious limitations with respect to performing unskilled work but could satisfactorily perform semi-skilled and skilled work (Exhibit 18F, pages 3-4). For these reasons, greater weight could not be assigned to Ms. [C]ornett's opinion.

(Tr. 34).

---

[1] This regulation has been rescinded, but still applies to claims (like this one) filed before March 27, 2017. 20 CFR § 404.1527.

10

Said plainly, the ALJ noted that Ms. Cornett's own mental status examinations and psychiatric assessments did not support the opined serious limitations with respect to performing unskilled work. (Tr. 34). On July 29, 2015, Ms. Cornett noted that many of Plaintiff's mental health attributes were "not remarkable," including her appearance, posture, general body movements, quality of speech, perceptions, hallucinations, intellectual functioning (Tr. 603–04). And later records from Allwell Behavioral Health Services showed unremarkable mental examinations. Progress notes from March 2017, for instance, suggested that Plaintiff was doing "as well as ever." (Tr. 678). And a record dated December 7, 2016, from Allwell Behavioral Health Services reported, among other things: regular speech rate, rhythm, and volume; clear and linear thought processes; no overt delusions, but auditory hallucinations; intact judgment and insight; orientation to time/place/person; no apparent memory impairment; attention and concentration within normal limits; appropriate to age language and knowledge fund; and blunted mood and affect. (Tr. 668). Given these and similar records, the ALJ's ultimate conclusion has support, and the Undersigned cannot conclude that the ALJ improperly assigned Ms. Cornett's opinion little weight.

Ultimately, Plaintiff asks this Court to re-weigh the evidence relating to her impairments and decide the outcome of this case differently. This request is impermissible under the substantial evidence standard of review. The Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Bradley v. Sec'y of Health and Human Serv.*, 862 F.2d 1224, 1228 (6th Cir. 1988); *Young v. Sec'y of Health and Human Servs.*, 787 F. 2d 1064, 1066 (6th Cir. 1986); *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996). Even if this Court would have decided the case differently, it must give deference to the Commissioner and affirm his findings if substantial evidence supports them. *Id.* Because substantial evidence

supports the ALJ's analysis and conclusion, the Undersigned recommends affirming.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 8) be **OVERRULED**, and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: July 18, 2019                                               /s/ Kimberly A. Jolson
                                                                          KIMBERLY A. JOLSON
                                                                          UNITED STATES MAGISTRATE JUDGE